**REVERE COPPER & BRASS, Inc.**
**Plaintiff,**

v.

**The ECONOMY SALES COMPANY,**
**Defendant.**

**Civ. A. No. 4929.**

United States District Court,
D. Connecticut.

July 16, 1954.

John H. Filer of Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for plaintiff.

Arthur S. Sachs (of Sachs, Sachs & Sachs), New Haven, Conn., for defendant.

SMITH, Chief Judge.

This is a motion by plaintiff seeking a temporary injunction restraining defendant from selling goods manufactured and trademarked by plaintiff at less than the price stipulated in an alleged fair trade contract between plaintiff and Olds and Whipple, Inc., a Hartford retailer.

### Findings of Fact

1. The plaintiff is a corporation incorporated under the laws of the State of Maryland and the defendant is a corporation incorporated under the laws of the State of Connecticut.

2. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

3. The plaintiff is engaged in the business of manufacturing and selling kitchen appliances which bear the plaintiff's tradename "Revere Ware" and they are in free and open competition in this State

with other appliances of the same general class produced and distributed by others.

4. The plaintiff has entered into contracts with retail dealers in Connecticut establishing minimum retail prices for its appliances.

5. On December 21, 1953, the plaintiff notified the defendant of its establishment of minimum retail prices.

6. On January 5, 1954, February 9, 1954, April 9, 1954 and May 3, 1954, the defendant offered for sale and sold at retail appliances of the defendant below the minimum retail prices established therefor and these sales were not for the bona fide purpose of discontinuing dealing in plaintiff's appliances; nor were the trademarks and brand name of such appliances removed or obliterated; and said appliances were not secondhand, damaged, defaced or deteriorated.

7. The defendant has within the past two weeks offered plaintiff's appliances for sale at less than the minimum retail price and has not notified the plaintiff in writing of its intention to close out its stock of the plaintiff's appliances nor given the plaintiff a reasonable opportunity to purchase such stock at the original invoice price.

8. The continuance by the defendant of advertising, offering to sell and selling the plaintiff's appliances at less than the minimum retail price will cause irreparable damage to the plaintiff and will tend to destroy the value of its goodwill and tradename.

9. Unless it is enjoined the defendant will continue to so advertise, offer to sell and sell the plaintiff's appliances.

### Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. The selling, offering to sell and advertising by the defendant of the plaintiff's appliances at less than the minimum retail prices established by the plaintiff is unlawful and actionable under Section 6713 of the Connecticut General Statutes.

3. A temporary injunction should issue pending the determination of this action.

### Discussion

■ Plaintiff seeks a temporary injunction under the Connecticut Fair Trade Act; Connecticut General Statutes Section 6708 et seq., Revision of 1949, as sanctioned by the McGuire Act, 15 U.S.C.A. § 45 and note. Absent the latter federal legislation, resale price maintenance contracts are unenforceable against non-signers because in violation of the Sherman Antitrust Act, 15 U.S.C. A. §§ 1–7, 15 note; Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035. Defendant opposes this motion on various bases. Plaintiff appears to have made out a prima facie case for injunction.

■ Although applications for preliminary injunctions are frequently refused where the right is doubtful because of disputed questions of fact or law, it is noted that even if there is such a conflict, if plaintiff shows an irreparable injury will be suffered prior to the final hearing, that there is a reasonable probability that the facts will be established as he alleges and that the injunction will not cause great injury to the defendant, a preliminary injunction may issue.

The question presented is whether the defenses raise any valid issues that present a dispute to be considered only in a final hearing.

■■ (1) Should plaintiff's motion be denied because it has not proven irreparable injury? Generally today, if a plaintiff comes within the purview of the Fair Trade Act, then violations and the threat of continued violations entitle him to injunctive relief. Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co., 1942, 128 Conn. 596, 24 A.2d 841, 845. In an action for an injunction forbidding the defendant from selling the plaintiff's products at cut rate prices, defendant contended that since only slight monetary damage had been shown, the injury was not irreparable and there

was no basis for injunctive relief. The court in granting the injunction stated:

> " 'Whether damages are to be viewed by a court of equity as "irreparable" or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered.' * * * The basis for injunctive relief in such a case as this is not past violations but threatened future ones."

This would appear to coincide with the general doctrine in injunctive relief cases. Plaintiff here has alleged the threatened future violations, and since the McGuire Act re-establishes the 1942 Connecticut case as good law over the body of Schwegmann, plaintiff satisfies the requisite irreparable injury aspect.

The case cited by defendant in CCH Trade Cases, Ditchek v. Weiss, 1949, 121 N.Y.L.J.1892, appears to be based on the proposition that "the violation of the Fair Trade contracts is the rule rather than the exception in the vicinity." If such an assertion could be proven, no damage either past or future could be shown. Unless we construe the evidence of defendant's witness who bought Revere Ware at less than the minimum retail price in several area stores to constitute abandonment of its policy by plaintiff, then the injunction should not be denied.

(2) The second contention made by defendant is that plaintiff's motion should be denied because plaintiff has not been diligent in policing its price structures. This argument is based on the testimony of defendant's employee who shopped in two stores in the Hartford area and purchased plaintiff's products at below the Fair Trade minimum price. Plaintiff counters with reference to testimony showing that it has commenced an action against another discount house in the Hartford area and one in the New Haven area, that another Hartford area store, Consumer Sales Company, after demands by the plaintiff, discontinued plaintiff's line of merchandise. There was other testimony that plaintiff is maintaining a watchful eye on the various retail outlets in the area.

██ On the testimony as adduced there would appear to be no significant conflict or dispute on the facts, and the evidence presented by the defendant would seem to raise only the barest inference that plaintiff is not policing its price structure. The general principle of law oft-cited on this point was stated by Shientag, J., in Calvert Distillers v. Nussbaum Liquor Stores, 166 Misc. 342, 2 N.Y.S.2d 320. The court there held that all the producer-plaintiff must show is a sincere and diligent effort to police, through legal process if necessary, but that he is not required as a matter of law to resort to legal process against every violator. On the other hand, the cases cited by the defendant present situations where defendant introduced evidence of abandonment by plaintiff of his rights by failure to enforce them in any way over a long period of time. Such evidence is not present here. The defense of non-enforcement is not well taken.

██ (3) The third defense is that plaintiff's products are not "in free and open competition with commodities of the same general class produced or distributed by others."

The Eastman Kodak case concerning color and black and white film can hardly be held analogous to the case before us. Eastman Kodak Co. v. Federal Trade Commission, 2 Cir., 158 F.2d 592. Plaintiff's cases are much closer.

At any rate, the evidence concerning other producers of copper-bottomed kitchenware was sufficient to obviate this defense.

██ (4) Defendant next relies on a theory of implied conspiracy in restraint of trade. This contention is grounded in his evidence that on at least nine specific items plaintiff and Eckoware fixed identical prices.

Even if Revere and Eckoware were the only two competitors, it is extremely

doubtful whether the coincidence of identical prices alone could be held to constitute a conspiracy in restraint of trade.

The note cited by defendant at 63 Yale L.J. 538 presents the theory of implied conspiracy as an advocated weapon in given situations, but the case cited at note 50, Interstate Circuit v. United States, 1939, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610, presents a situation of conscious plan and participation. Even if such a policy argument were generally adopted, this does not appear to be the case warranting its application.

■ (5) Defendant's fifth defense is based on the theory that plaintiff's use of price maintenance against non-signers prior to the effective date of the Maguire Act is cause for the denial of the injunctive relief he now seeks. Plaintiff maintains, and we agree, that since plaintiff was not a knowing violator prior to Schwegmann (and who was?), there is no taint on his price structure enforcement attempts now. In countless other cases plaintiff was enforcing against non-signers prior to Schwegmann without incurring any post-McGuire disability in enforcement. Neither of the cases cited by defendant are applicable to this situation.

■ (6) The final defense is based on the alleged failure by plaintiff to prove that there is in existence a required valid contract with Olds and Whipple. This contention is based on the fact that although plaintiff has introduced what appears to be a subsisting contract with Olds and Whipple, a witness of defendant could find no Revere Ware or other kitchenware in the Olds and Whipple store on June 14, 1954.

Defendant's evidence in this regard does not invalidate the contract introduced into evidence. There is nothing to indicate that any notice of termination was ever given by either party as required. That there was no Revere Ware in the shop in a given day does not necessarily imply that Olds and Whipple no longer carry Revere products at all, or more important, that they did not carry Revere products on the date of notice to the defendant of the contract and minimum price list.

Regardless of a court's opinion as to the economic advisability of the so-called "Fair Trade" theory, it is now part of our law by acts of Congress and the state legislatures, which are valid even if considered inconsistent with the basic principles of a free competitive system as formerly carried out in the federal antitrust laws. The court must enforce the law as it is.

The temporary injunction may be granted with a bond of $1,000 as stipulated to be furnished by plaintiff pending final hearing.